|, CHARLES R. JONES, Judge.
The Appellants, Bally’s Louisiana, Inc. and Park Place Entertainment Corp., appeal the judgment of the district court granting a preliminary injunction in favor of the Appellee, Metro Riverboat Associates, Inc., prohibiting the invocation of the arbitration clause in the Belle of Louisiana, L.L.C. Operating Agreement. Following a review of the record, we affirm the judgment of the district court.

FACTS AND PROCEDURAL HISTORY

This is merely one of many protracted civil suits between Bally’s Louisiana, Inc. (hereinafter “BLI”), and Metro Riverboat Associates, Inc. (hereinafter “Metro”). The following are the facts relevant to this case. BLI and Metro are the members of the Belle of Orleans, L.L.C. (hereinafter “Belle”), which is a Louisiana limited liability company that owns and is the licensee of the Bally’s Casino Lakeshore Resort located on Lake Pontchartrain in New Orleans near the New Orleans Lakefront Airport. Appellant, Park Place Entertainment Corporation (hereinafter “Park Place”), is the indirect parent company of BLI.
*1277 The members of the Belle, BLI and Metro entered into an Operating Agreement of the Belle. The Operating Agreement provides for the funding of Bally’s Casino operations through capital contributions and “cash calls”.
|2According to BLI, all capital contributions to the Belle, as well as additional inter-company loans to the Belle have been made by BLI or its affiliates, which was necessary for the continued operation of the Belle. BLI claims that from February 2000 to January 2001 it advanced the Belle over five million dollars, and subsequently proposed a “cash call” to recoup the advanced funds. Also, BLI claims that it learned that Elizabeth Elmore D’Orville alleged that Metro transferred to her a ten percent interest in the Belle on or about September 20, 1993 without obtaining the written consent of BLI, and without notifying BLI or the Louisiana Gaming Control Board. As a result of these two occurrences, BLI invoked the arbitration provision in the Operating Agreement, scheduled a date for arbitration to occur according to the terms of the Operating Agreement, and notified Metro of said date.
Metro refused to arbitrate. According to Metro, BLI did not have the authority to call for arbitration of the cash call because a vote by the members is required. Also, Metro claims that it is denied access to the Belle’s financial records, which prevents Metro from making an informed decision regarding the “cash call”. Further, Metro denies that it transferred any of its interest in the Belle to Ms. D’Orville.
As a result, Metro filed in civil district court a Petition for Writ of Injunction, for Temporary Restraining Order, and Declaratory Judgment on April 12, 2001, and a temporary restraining order was issued. BLI and Park Place filed a Joint Memorandum and a Supplemental Memorandum in Opposition to Petition for Writ of Injunction. On May 3, 2001, an evidentiary hearing on Metro’s petition for preliminary injunction was held. On May 9, 2001, the district court rendered judgment enjoining BLI and Park Place from enforcing the arbitration provision in |sthe Belle Operating Agreement, among other things. It is from this judgment, BLI and Park Place appeal. After the filling of briefs and immediately preceding the hearing, BLI and Park Place filed Peremptory Exceptions of Res Judicata and Preclusion of Judgment and Incorporated Supporting Memorandum. This Court allowed Metro the opportunity to file a post-hearing brief in response to these exceptions. Following a review of the briefs, the exceptions are overruled.

DISCUSSION

Although numerous issues were raised by BLI and Park Place, and the district court reasoned that the arbitration provision in the Operating Agreement was not valid and subject to revocation, specifically section 13.02[1] pursuant to La. C.C. art. *1278 2030[2], because the penalties imposed upon a member who fails to arbitrate are so severe that they go against public policy, the judgment merely grants the preliminary injunction. “A final judgment shall be identified as such by appropriate language. When written reasons for the judgment are assigned, they shall be set out in an opinion separate from the judgment.” La. C.C.P. art. 1918. Hence, the judgment and the reasons for judgment are separate, but it is the judgment which is appealed. Therefore, what is before us is whether the district court erred in granting the preliminary injunction.
|/An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant ...” La. C.C.P. art. 3601. Thus, the pertinent inquiry is whether invocation of the arbitration clause causes irreparable injury.
Under section 4.05 of the Operating Agreement “[cjalls for additional cash contributions to the Company (‘Cash Calls’) shall not be permitted without approval of the Members (unless approved via arbitration pursuant to Article XIII herein).” (Emphasis added). Also section 5.02 Reserved Powers, states that
[wjithout limiting the generality of Section 5.01 herein, the Members shall not have the right or authority to take any of the following actions (each a ‘Major Decision’ and collectively, the ‘Major Decisions’) on their own behalf or on behalf of the Company without the prior written consent of the other Members (unless approved via arbitration pursuant to article XIII herein); ... (xiii) selling, hypothecating, or otherwise transferring or disposing of, or any interest in, any of the Company’s assets other than in the ordinary course of business or as provided for in the Annual Operating Plan; ... (xx) making any Cash Calls; ... (Emphasis added)
There is no requirement of a vote of the membership prior to arbitration. The Operating Agreement allows for Member approval or arbitration. Therefore, it was procedurally permissible for BLI to request arbitration based on the provisions in the Operating Agreement.
Since the arbitration clause can be invoked, it is necessary to review the language in the arbitration clause. Section 13.01 merely covers the scope and procedure for arbitration, and does not cause irreparable harm. However, section 13.02 is a forced buy/sell provision for failure to arbitrate a dispute, which BLI can invoke because Metro refused to arbitrate the dispute. Failure to arbitrate a dispute without more should not result in immediate loss of one’s ownership interest or cause one to be faced with buying the other member(s) ownership interest. | ¡¿Therefore, irreparable injury beyond lost compensation would result if BLI and Park Place were allowed to invoke the forced buy/sell provision in the arbitration section of the Operating Agreement. Thus, the district court did not err in granting the preliminary injunction against arbitration.
*1279 Additionally, BLI and Park Place argue that the Operating Agreement has previously been reviewed without issue. However, specific provisions of the Operating Agreement have been reviewed, but not particularly the clause for failure to arbitrate. Further, the issue of whether the failure to arbitrate provision causes irreparable injury particularly arises out of the transaction and occurrence of Metro refusing to submit to arbitration of the dispute regarding a cash call. See La. C.C.P. art. 425. Therefore, we overrule the Exceptions of Res Judicata and Preclusion of Judgment.
DECREE
For the foregoing reasons, we hereby affirm the judgment of the district court and overrule the Exceptions of Res Judica-ta and Preclusion of Judgment.

AFFIRMED.

. Section 13.02 Failure to Arbitrate. In the event that one of the Members elects to submit a dispute to arbitration (the "Electing Member”) and the other Member declines to submit the dispute to arbitration (the "Declining Member"), the Electing Member shall have the option of either (i) purchasing the Declining Member's interest in the Company for a price equal to the product of (x) the "Net Income Amount” (as defined below) and (y) 4.5, less all liabilities of the Company re-fleeted on its balance sheet as of the date the Electing Member elects to submit a dispute to arbitration, or (ii) selling its interest in the Company to the Declining Member for a price equal to the product of (A) the "Net Income Amount” (as defined below) and (B) 8.5, less all liabilities of the Company reflected on its balance sheet as of the date the Electing Member elects to submit a dispute to arbitration. For purposes of this Section 13.02 only, "Net Income Amount” shall mean (i) the Net *1278 Income of the Company (determined in accordance with generally accepted accounting principles, consistent with past practices), for the twelve (12) month period ending on the last day of the last calendar month preceding the date upon which the Electing Member elects to submit a dispute to arbitration (the "Ending Date”), plus net interest expense and net income tax expense for such twelve (12) month period through the Ending Date.

. La. C.C. art. 2030 states: A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative.